May it please the court, Whitney Bernstein on behalf of Mr. Eltareb. I intend to reserve three minutes for rebuttal and I will watch the clock. Mr. Eltareb's conviction must be reversed for two main reasons. The first is that his jury trial waiver was not knowing, intelligent, and voluntary. And the second is that the experts offered prejudicial and impermissible testimony in violation of rules 404, 704, and 403. The record does not support a contrary finding. With this court's permission, I'd like to focus on the jury trial waiver issue. Mr. Eltareb's jury trial waiver was not knowing, voluntary, or intelligent. Well, he gave a written one, right? And he was represented by counsel. That what evidence in the record shows the district court was aware or should have been aware of the facts that you're now alleging when he accepted the waiver? Well, your honor, I think that that's the wrong inquiry. I think the question is whether or not the waiver was, in fact, knowing, voluntary, and intelligent. Not what the district court was aware on. Can we look outside the record in the way that he seemed to want to do on the new trial motion when the Cochran case suggests that that's not the appropriate vehicle? Yes, your honor, you can. Because what the Cochran case suggests in footnote one is that because that record had nothing in the Cochran suggested that habeas was the proper vehicle. And that's similar for all the other cases that the district court relied upon. Azo, Cochran, Goodwin, and the court also referenced Duarte Higardo. In Azo, Cochran, and Goodwin, there were no additional facts in the record bearing upon whether the written waiver was knowing, voluntary, and intelligent. But that is not the case here. Are those cases direct appeal cases like your case? They are, your honor. And so is Duarte Higardo. You've got direct appeal. You've got post-verdict evidentiary submissions. And so that, I'm still curious why we aren't limited to the record, why these are not more properly raised in the habeas. I have four responses for your honor. And the first I think is that, stepping back for one second, is that at a minimum in this case, there is evidence in the record, unrefuted evidence in the record, that Mr. Altereb's jury trial waiver was not knowing, voluntary, and intelligent. And those are the declarations. And so to respond- Well, stop there for a moment, counsel. I'm really curious why none of that was objected to at the time the waiver was accepted. It wasn't until many months after, as I understand it, that the issue was first raised. Tell us, how long between the time the judge accepted the waiver and the time it was challenged? I don't know precisely, your honor, but it was a matter of months. However, as soon as Mr. Altereb did obtain new counsel, that timely motion under Rule 33 was brought before the district court. Are you bringing an ineffective assistance of counsel claim then? Not at this stage, your honor. For this direct appeal, the issue is that there's evidence in the record that Mr. Altereb's waiver was not knowing, voluntary, and intelligent. And the district court and this court have the ability to review this on direct appeal for four main reasons. When you say there's evidence in the record, was the evidence in the record on the day when the trial court accepted the waiver? No, your honor, and there is no case holding that the inquiry is limited to that day. But essentially, though, if we buy your argument that what the district court did was it read on the record and then confirmed with Altereb that he had signed the written jury trial waiver, he was represented by counsel. And so we would essentially have to say that that doesn't meet the requirements of federal rule of criminal procedure 23, right? Because there are things that were submitted late. I don't think that's how the court would need to get there. I think the proper vehicle is under Rule 33, which was how it was raised. It's proper to have considered these declarations that were submitted to the district court under Rule 33. Also, but you concede that based on what the district court had that day, that it was okay, but then you're asking the district court to revisit it later under Rule 33. But was Rule 23 violated on that date, even though none of what you're talking about was available on that date? On the date that Mr. Altereb did waive trial in court with the limited colloquy provided, I don't think the district court was on notice that that was invalid. So it was okay that day? I'm sorry? It was the jury waiver was okay that day? Well, I don't believe that the jury waiver was ever valid. The district court read it into the record, and he had counsel, and Mr. Altereb confirmed that he read it and signed it. Correct that that would happen that day. If your Honor's question was whether it was valid in that moment, I think that's a separate inquiry from whether the district court was on notice in that moment that there was a deeper inquiry required. And so to answer the first, I don't believe there was anything in the record. The inquiry, though, I heard you to say is based on facts that came later. What are the facts the district court had that day that required a deeper inquiry? I don't believe the district court had any facts that day that required a deeper inquiry. And Mr. Altereb was in the courtroom at the time and specifically agreed that he had waived. Is that correct? Correct, Your Honor. He did specifically agree that he had waived. However, there was no inquiry as to whether he understood what those rights meant. And in fact, what the record shows is that he never did and was never advised. But Cochran doesn't require that. It suggests it would be nice, but it doesn't require it, does it? It does not, Your Honor. This court's case law does suggest over and over again for decades that a deeper inquiry would be prudent for district courts to undertake, but this court has never gone as far as to make that a requirement. However, Your Honor, it seems as though some of the court's questions are suggesting the idea that this came later, and that is something that the district court would be free to evaluate in a credibility finding. What we think is necessary at a minimum is that this court remand to the district court so that the district court can consider the record more fully, can consider the evidence before it in a way that it didn't do assistance of counsel claims. Though traditionally reserved for 2255s, this court has held specifically in steel that where the record supports an evaluation, the district court is free to undertake that, and there's no need to wait for a 2255. What's the nature of the inquiry that you say the district court should have undertaken at the Rule 33 stage? Is it whether or not the district court erred in accepting the jury waiver at the time it was taken, or can the district court take into account that essentially this is being presented after the bench trial turned out badly? Yes, Your Honor. It's what Your Honor was suggesting. The inquiry that the district court could have is authorized to and should have undertaken, and what we're asking this court to at least remand for the district court to do is to evaluate that evidence, is to take testimony, hold hearings, make a credibility finding about those declarations. And if the suggestion is that this came up after the fact and that somehow negates its credibility, that certainly is something that the court can consider in its credibility determination and its findings. We would disagree that there was any type of gamesmanship at play, but that is something that the district court could have considered, and there are no negative credibility findings in the record before this court. Counsel, you suggested that we might take into consideration ineffective assistance in this proceeding, but did you raise that issue at all in your brief? No, Your Honor, and I apologize if I misspoke. That wasn't the suggestion. I was suggesting that this is another claim that is traditionally reserved for a habeas proceeding, but this court has said that where the record below supports the district court evaluating those claims, they can in fact be evaluated below. But are you pursuing that argument, or are you just commenting? No, Your Honor, I was suggesting that this is not pursuing this argument. I was just commenting on this issue. If the suggestion is that, I believe as Judge Callahan raised earlier, that we should raise these claims in a 2255, I would just note two additional facts, which is that the government itself suggests that the appropriate remedy for the district court's decision to not consider the supplemental evidence would be remand for further potential consideration, and that's at the government's brief on page 41 in its footnote 7. And I would also add that to dismiss this case on a 22, I'm suggesting claims should be raised in a 2255, is to waste court resources. The record here is already developed, and it would be a waste of time and resources to renew these claims in a motion to vacate under 2255. It should be, at a minimum, this court should remand for the district court to make those factual findings. While we do believe that the unrefuted evidence in the record is sufficient for this court to find that Mr. Alterab's jury trial waiver was not knowing voluntary and intelligent, at a minimum, it should send back to the district court so that the district court can take evidence and can determine the validity of those declarations and make a factual finding for this court to further review. If this is remanded, and excuse me, if this is denied and we're told to proceed via habeas, that will also have prejudicial impacts on Mr. Alterab. And because the record is fully developed at this juncture and was before the district court, the district court could have and should have addressed these declarations and allowed factual findings that would answer many of this court's inquiries. If there are no further questions, I'll save the remainder of my time for rebuttal. All right, thank you. Good morning, your honors. May it please the court. Roger Shea on behalf of the United States. Counsel, can I just say, the way your video is set up, you are in shadow. It's hard to see you because there's so much light from the window. My apologies, your honor. I had better lighting. I had better lighting, but I was disconnected and at the last minute had to reconnect to a different device. So I apologize that you don't have great lighting. But your honors, I'd like to start off by addressing the jury trial waiver issue. Defendant concedes that no more formal inquiry was necessary. And that's right, because the Britain jury trial waiver complied with Rule 23. Defendant was represented by counsel, the government consented, and the court accepted. To answer one of your honors' questions, nearly three months passed before, after defendant waived jury trial, there was conviction, and then it submitted these post hoc declarations. So the question before this court is, was the district court required to consider post conviction declarations in deciding the validity of the jury trial waiver? The clear answer under this circuit's case law is no. As noted in Cochran, Sadia, and Goodwin, those cases suggest the proper vehicle is 2255. And even appellate claims that the district court should consider it doesn't say that the district court has to. So Steele was dealt with an ineffective assistance of counsel claim. The court noted that typically IAC claims should not be considered by the district court, but they may be considered. So even taking that language in Steele for IAC claims related to ineffective assistance of counsel, the district court was not required to do so. And I just want to- Counsel, you're opposing counsel specifically through our attention to footnote seven on page 41 of your brief. Yes, Your Honor. What's your response? In that footnote, we say if the claim has merit. The claim does not have merit because the district court did not abuse its discretion in deciding not to consider these post hoc declarations. And that's the question before this court, whether the district court abused its discretion. And under Cochran, Sadia, and Goodwin, that case law says 2255 is an appropriate vehicle. And even reading Steele generously to apply to challenges to jury trial waivers, simply the court has the ability and discretion to. And I want to challenge something the appellant says that the record is fully developed. In this case, it is not. Steele noted the Ninth Circuit should only consider when the record is sufficiently developed. Here, the appellant admits that there should be cross-examination and kind of a factual record. So in that sense, the government needs to undertake why the defendant waived jury trial, the benefits he was seeking to get, question his former attorney, perhaps waivers of a time attorney-client privilege. So therefore, the record is not fully developed. And the district court was certainly within its discretion to choose to evaluate the jury trial waiver at the time it accepted that waiver. So for these... So did he, when Mr. El-Turab, was the district court had the discretion to order a new trial in the interest of justice, correct? Yes, Your Honor. So did El-Turab ever ask for that, the district court, to exercise this discretion? And I'm wondering, are these arguments waived? So we do raise it in our brief. I believe at the district court level, El-Turab raised the jury trial waiver issue along with evidentiary issues and asked for a new trial based on those issues. In our opening brief, we do claim an appellant's, excuse me, appellant's opening brief, they note that the jury trial waiver was not knowing, intelligent, and voluntary based on the whole record. And our brief response in our answering brief is that in fact, they don't challenge the motion for a new trial and we make a brief argument that it was waived in that context, Your Honor. Okay. So looking at the issues, we think it's clear that the case law suggests 2255 is an appropriate vehicle and even reading Steele generously, the district court may do that and wasn't required to do so. And I think appellant's counsel's work or the district court should remand for an evidentiary hearing. And in terms of just some of the- So you don't have rebuttals. So do you maybe, I don't know what appellant is going to raise on what is technically going to talk about, but we haven't talked about the expert testimony at all from senior deputy and agent Weyes. Yes, Your Honor. So do you want to talk about that and whether particularly, I mean, the line drawing is tough and it looks like there might've been a couple of jumps over the line there and whether those are prejudicial or harmless. Sure. I'll briefly address that, Your Honor. Of course, the standard of review for these experts should be plain error. Regarding the Hells Angels expert, a GR 1 to 3, the only challenges that defendant made to that expert pretrial was that the expert was untimely, not relevant and 403. There was no argument regarding profile evidence or ultimate issue under 702. At trial, there was one objection to ultimate issue was ultimately sustained as one specific question. Regarding the expert on guns, defendant filed a motion to eliminate only arguing regarding the untimeliness of that expert and requested a doubtful hearing. Later, he withdrew that motion at GER 67. At trial, he only made objections regarding relevance, hearsay, and one confusing kind of 703 ultimate issue argument. So given the case law in Gomez-Morena, we believe the proper standard of review is plain error. But even under abuse of discretion, the district court did not abuse its discretion in remitting this evidence because it wasn't profile evidence and there was no ultimate issue, no 403, and ultimately is harmless. And with the time I have remaining, I can address- When we assess prejudice, let's assume that they're, for argument's sake, let's assume that maybe there was some testimony on some of the ultimate elements or criminal intent or things along those lines. When we assess prejudice, does it matter that it was a court trial instead of a jury trial? Yes, we do believe that does make a difference, Your Honor. And here, the danger of prejudice has to substantially outweigh the danger of the probative value of the evidence. As we know then in Caudill, it'd be most surprising if potential prejudice had any significance in a bench trial. And the district court did engage in proper analysis in a written ruling in GER 28 to 29. It noted that this evidence was relevant and had probative value under 404B as to motive, intent, and knowledge. And that after a limiting instruction, that this evidence may have some prejudice. It was only after defendant weighed the jury trial, the court said on the record, there's case law for admitting this evidence and now any potential prejudice is attenuated. So we think even in a jury trial that this evidence would be admitted given the case law in the circuit such as Santiago Takahashi admitting gang evidence in a jury trial, but it's even more attenuated given that this district court judge did not need jury instructions to only use this evidence for a limited purpose. And I'd push just back a little bit, Your Honor, regarding that it did go to the ultimate issue. We think that it wasn't profile evidence and that the testimony didn't go to the ultimate issue. So we had testimony about the structure of the Hells Angels. This wasn't testimony that defendant Eltred engaged in the drug transaction and gun charge because he was a Hells Angels member. Instead, it was because of the structure of the Hells Angels and their roles. Likewise, an analogy would be a summer associate and a some rules. It occurred to me that the Hells Angels, they could be HR experts in the sense that they have a pretty strict code of what you can do and what you can't do. And everyone knows what happens if you do certain things. Now, from an HR standpoint, they might be a little severe that if you, you know, if you flew colors when you were a prospect or something along those lines, but they're, you know, I think to me, I don't think the average person knows how they work. So I, I'm convinced for testimony in that area to know what the structure is. The question. Yes, Your Honor, counsel makes an argument. Anything that was said, well, the only reason they would have a gun would be for X, Y, and Z. And that's an element of the the gun. If it, you know, was a question on that is what a judge who is pursuing law know that the judge still had to decide each and every element. Yes, Your Honor. To address that in two regards, first with the Hells Angels expert, the district court judge, even if accepting the Hells Angels expert testimony is true, did not necessarily have to find guilt. For example, at ER 147, the Hells Angels expert testified that typically in a deal of this size that a prospect would get help from a full patch member. Furthermore, there's evidence that the expert testified that prospects don't always follow the rules and that follows common sense. Not everyone in an organization always follows the rules. And he testified that a prospect might not tell a full patch member and engage in this activity himself. And there's punishment for that, which could involve cleaning up at a party or something to more severe. And that punishment presupposes that the Hells Angels prospect got caught. So even in accepting the testimony is true, the district court judge could have found in this specific instance, defendant wasn't acting within the structure of the Hells Angels. It was just all the circumstantial evidence in this case that showed defendant's guilt in driving six and a half hours with a loaded .38 caliber revolver by his side, texting someone at 3.38 in the morning. But weren't there a few instances where Waves' testimony seemed to opine on a tariff's medical state? So, Your Honor, he said, for example, that he used the gun quote, for a defensive or offensive purpose, close quote. I mean, that seems pretty clearly to be talking about his opinion as to his mental state with the gun. Your Honor, our argument is that testimony was very probative as to the potential use of the weapon, but did not testify to Altarev's exact mental state and noted in Gomez-Norena, a testimony from an expert that there's $200,000 in cocaine in a suitcase, showed intent to distribute, didn't go to the defendant's actual knowledge. And he also testified that the gun was not used for hunting, was likely not used for sport, and was likely not used for collection. And therefore, the other category was likely that the possession, in this instance, based on the facts put before him, were used for a defensive purpose. So the district court judge still could have accepted that testimony was true, but based on other evidence and argument by counsel, didn't necessarily go to Altarev's state of mind on that specific day. It certainly supported the inference, and that's why it was relevant and so probative. We feel, even though the relevant evidence is very probative, it didn't necessarily cross the line, and in any event, it was harmless based on all the different evidence we laid out in our brief, along with the district court's order denying the renewed motion for acquittal. If there aren't any further questions from the panel, I would just like to reiterate that the jury trial waiver was valid at the time the court accepted it. Case law in the Ninth Circuit suggests that 2255 is an appropriate vehicle, and appellant has not shown that the district court abused its discretion in refusing to consider the post-conviction evidence. And in that regard, the district court did not abuse its discretion. Unless the court has any more questions, I'll submit. Any additional questions from my colleagues? No questions. All right, thank you. All right, Ms. Bernstein. Thank you, Your Honors. I want to briefly wrap up the jury trial waiver issue, but I'd like to address the experts. I think I'll start there, if that's okay with the court. What's important to understand in this case is that the government could only establish that Mr. Altarev may have been aware of the drug type and quantity as based on the expert testimony. The experts testified to the syllogism that... Did the prospect testify? I'm sorry? Did the prospect testify as a witness? No, Your Honor. The experts testified to the syllogism that, number one, a Hells Angel's full patch member would know whether there were drugs, the specific amount of drugs involved, and that Mr. Altarev is a Hells Angel's full patch member. Ergo, number three, that Mr. Altarev knew whether there were drugs, the specific amount and type of quantity of drugs, and that he brought that gun in furtherance. And this is just like Wells in a case with overwhelming circumstantial evidence where the government used a doctor to create a profile of someone who would commit a workplace murder and then invited the fact finder to convict because Wells fit that profile. Was that a jury trial? It was, Your Honor. I struggle with the fact that having done court trials myself as a trial judge where people waive it, we're presumed to know what the law is. And so arguably, even if someone, an expert says X, Y, and Z, a judge isn't going to find someone guilty if they feel like the elements of the crime are not met beyond a reasonable doubt. And whereas I think that kind of evidence is arguably more damaging to jurors who don't really, even though we tell them what the law is and they're presumed to follow it, aren't really quite as good at it as judges. Yes, Your Honor. But my main response to that would be the district court here did rely on this evidence. And that's clear from two quotes that I'll point to in the record, both at ER-12. The district court said, quote, Deputy Holt testified regarding the commonality for Hells Angels full-patch members to accompany prospective members to service protection and supervise criminal activity. This evidence of defendants and Henson's unequal relationship in the Hells Angels indicates that Henson would not have acted without the defendant's knowledge. The record here really does speak for itself. The government acknowledged that it needed the experts to create a profile from which they could establish knowledge of the gun, knowledge of the drugs. But isn't your client, wasn't your client also at the scene in a car with the gun? Absolutely, Your Honor. But 924-C is only sustainable if there's also evidence that there was, that Mr. Altereb was aware of the drug trafficking. And the government used experts to bridge that gap. The evidence does show that. But there's also evidence of a drug trafficking that's happening not that far from where this, you know, it's, let's just say if the person sitting in a car with a gun gets arrested, they're not a full-patch Hells Angel, and they, you know, you're in the Walmart parking lot, and they said that they were going shopping, you know, you wouldn't have that kind of expert, you know, that there would be other things regarding that conduct. But here, why the guy, you know, what the procedure is as to how it goes, that it's for MO, or for if, you know, it kind of, it goes to whether your client can say, oh, I just happened to be in the parking lot, and I just happened to have a gun. Yes, Your Honor, except the government never purported to introduce this evidence for background, or for investigative purposes, or for modus operandi, or for motive. The government just heard him say that it was introduced for, I thought that's what I heard the government just say. I direct the court to, and I realize I'm out of time, but I'd like to address the question. I direct the court to various places in the record where the government conceded that this information, and that this expert testimony was used exclusively for knowledge. That's an ER-90, the government's motion in limine, where they said that they intend to amongst other things, show defendants knowledge of the nature and meaning alleged in the indictment. At ER-95 to 96, the government argued that the affiliation could be introduced to provide knowledge. Quote, the proffered testimony establishes LTREV's knowledge of the nature of the gun for drugs exchange. And at ER-297, the government also states that it further establishes the defendant LTREV's motive and intent in bringing the firearm was to service protection should something go wrong. I'd also cite the court to criminal record 73, which is the August 27th, 2018 hearing, where the court specifically inquires, quote, under that theory, you're trying to use the Hells Angels to establish that Mr. LTREV knew what was going on. AUSA, yes, your honor. Court, because he's the full pageant member? AUSA, yes, your honor. Court, so co-defendant would not do something of which Mr. LTREV was not aware? AUSA, yes, honor. And the government admitted this testimony, and the testimony itself was extremely violative of the rules of both 404, 704, and 403. The government closed on this testimony. ER-129 to 30, ER-123, ER-118 to 119. I'll just use one quote in the government's closing. Quote, as shown by the expert testimony of Senior Deputy Holt, the hierarchy of full patch membership with the prospective membership shows that the full patch member would know all aspects of the transaction, the amount of the drug, and the type of drugs. And there's various other quotes, if the court would like me to continue. No, I think that we've gone over, but if either of my colleagues have any additional questions, we'll allow them. Does not appear. Thank you both for your argument in this matter. This matter will stand submitted. Thank you. Thank you, your honor.
judges: O'scannlain, Callahan, Collins